**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| KIMBERLY KENT, Individually and for Others Similarly Situated | **Case No. ________________** |
| v. | Jury Trial Demanded |
| CITY OF DETROIT | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Kimberly Kent (Kent) brings this collective action to recover unpaid wages and other damages from the City of Detroit (Detroit).

2. Detroit employed Kent as one of its Hourly Employees (defined below).

3. Detroit paid Kent and the other Hourly Employees by the hour.

4. Kent and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. However, Detroit does not pay Kent and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

6. Instead, Detroit pays Kent and the other Hourly Employees bonuses, including safety and attendance "incentive" bonuses, that it excludes from their regular rates of pay for overtime purposes (Detroit's "bonus pay scheme").

7. Detroit's bonus pay scheme violates the Fair Labor Standards Act (FLSA) by failing to compensate Kent and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has personal jurisdiction over Detroit because it is a Michigan municipal corporation.

10. Venue is proper because Detroit maintains its principal place of operation in Wayne County, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

11. Detroit employed Kent as a transport equipment operator (bus driver) from approximately August 2025 to June 2026.

12. Throughout her employment, Detroit subjected Kent to its bonus pay scheme.

13. Kent's written consent is attached as **Exhibit 1**.

14. Kent brings this collective action on behalf of herself and similarly situated Detroit employees.

15. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who Detroit paid under its bonus pay scheme during the last three years through final resolution of this matter (the "Hourly Employees").**

16. Detroit is a Michigan municipal corporation located in Wayne County.

17. Detroit may be served with process through its registered agent: **City of Detroit Law Department, 2 Woodward Avenue, Suite 500, Detroit, Michigan 48826**.

## FLSA COVERAGE

18. At all relevant times, Detroit was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

19. At all relevant times, Detroit was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

20. At all relevant times, Detroit was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

21. At all relevant times, Detroit had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

22. At all relevant times, Kent and the other Hourly Employees were Detroit's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

23. At all relevant times, Kent and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

24. "The Detroit Department of Transportation (DDOT) is the largest public transit provider in Michigan that serves the city of Detroit, surrounding suburbs, and neighboring cities."[1]

25. To meet its objectives, Detroit employs workers, including Kent and the other Hourly Employees, to provide transportation services to residents.

26. For example, Detroit employed Kent as a bus driver from approximately August 2025 through June 2026.

27. Kent's job duties included driving an assigned bus route in and around the city's metropolitan areas.

28. Throughout her employment, Kent recorded her "on the clock" hours using Detroit's timekeeping system.

29. Thus, Detroit's employment records reflect the number of "on the clock" hours Kent recorded working each workweek.

30. Kent regularly worked more than 40 hours in a workweek.

---

[1] https://detroitmi.gov/departments/detroit-department-transportation (last visited August 25, 2026).

31. Kent typically worked approximately 8 to 9 hours a day, 5 days a week "on the clock" (40 to 45 hours in a workweek).

32. Detroit paid Kent approximately $25.38 an hour.

33. Like Kent, the other Hourly Employees typically work approximately 40 to 50 hours in a workweek "on the clock."

34. Kent and the other Hourly Employees perform their jobs under Detroit's supervision and use materials, equipment, and technology Detroit approves and supplies.

35. Detroit requires Kent and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

36. Kent's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Detroit.

37. At the end of each pay period, Kent and the other Hourly Employees receive wages from Detroit that are determined by common systems and methods that Detroit selects and controls.

38. But Detroit does not pay Kent and the other Hourly Employees at the required premium overtime rates for all overtime hours worked.

39. Instead, Detroit pays Kent and the other Hourly Employees under its bonus pay scheme.

40. Specifically, Detroit agrees to pay and subsequently pays Kent and the other Hourly Employees non-discretionary bonuses, including quarterly safety and attendance "incentive" bonuses, if they fulfill Detroit's eligibility criteria.

41. But Detroit excludes these non-discretionary bonuses from Kent's and the other Hourly Employees' regular rates of pay for overtime purposes.

42. For example, during the pay period ending April 12, 2026, Detroit paid Kent a $500 and a $1,500 incentive bonus upon her achievement of sufficiently good attendance and maintaining a sufficiently safe driving record:

**Earnings**

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Casual Leave | 0.000000 | $0.0000 | $0.00 | $406.08 |
| Holiday | 0.000000 | $0.0000 | $0.00 | $1,015.20 |
| Incentive Bonus | | | $1,500.00 | |
| Incentive Bonus | | | $500.00 | $3,500.00 |
| Overtime | 0.000000 | $0.0000 | $0.00 | $3,014.48 |
| OWL Regular | 0.000000 | $0.0000 | $0.00 | $6,079.88 |
| Regular Pay | 0.000000 | $0.0000 | $0.00 | $8,805.58 |
| Spread Time | 0.000000 | $0.0000 | $0.00 | $10.53 |

43. But Detroit excluded these bonuses from her regular rate of pay for overtime purposes during this pay period (as well as all other pay periods):

**Earnings**

| Pay Type | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|
| Casual Leave | 16.000000 | $25.3800 | $406.08 | $406.08 |
| Holiday | 0.000000 | $0.0000 | $0.00 | $1,015.20 |
| Incentive Bonus | 0.000000 | $0.0000 | $0.00 | $1,500.00 |
| Overtime | 2.720000 | $39.5928 | $107.69 | $3,014.48 |
| OWL Regular | 31.830000 | $26.3952 | $840.16 | $6,079.88 |
| Regular Pay | 25.480000 | $25.3800 | $646.68 | $8,805.58 |
| Spread Time | 0.000000 | $0.0000 | $0.00 | $10.53 |

44. Thus, under Detroit's bonus pay scheme, it does not pay Kent and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for hours worked in excess of 40 in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

45. Kent brings her claims as a collective action under Section 216(b) of the FLSA on behalf of herself and the other Hourly Employees.

46. Like Kent, the other Hourly Employees are victimized by Detroit's bonus pay scheme.

47. Other Hourly Employees worked with Kent and indicated they were paid in the same or similar manner, performed similar work, subject to Detroit's bonus pay scheme.

48. Based on her experience with Detroit, Kent is aware Detroit imposed its bonus pay scheme on other Hourly Employees.

49. The Hourly Employees are similarly situated in the most relevant respects.

50. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked.

51. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

52. Rather, Detroit's bonus pay scheme renders Kent and the other Hourly Employees similarly situated for the purpose of determining their right to overtime

wages at the required rates—based on all remuneration—for all hours worked in excess of 40 in a workweek.

53. Detroit's records reflect the number of "on the clock" hours the Hourly Employees were recorded working each week.

54. Detroit's records also show Detroit paid the Hourly Employees non-discretionary bonuses.

55. And Detroit's records show it excluded these non-discretionary bonuses from their regular rates of pay for overtime purposes.

56. The back wages owed to Kent and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

57. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Detroit's records, and there is no detraction from the common nucleus of liability facts.

58. Therefore, the issue of damages does not preclude collective treatment.

59. Kent's experiences are typical of the experiences of the other Hourly Employees.

60. Kent has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

61. Like each Hourly Employee, Kent has an interest in obtaining the unpaid wages owed under federal law.

62. Kent and her counsel will fairly and adequately protect the interests of the Hourly Employees.

63. Kent retained counsel with significant experience in handling complex collective action litigation.

64. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Detroit will reap the unjust benefits of violating the FLSA.

65. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

66. The multiplicity of actions would create hardship to the Hourly Employees, the Court, and Detroit.

67. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

68. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

69. Among the common questions of law and fact are:

a. Whether Detroit paid the Hourly Employees non-discretionary bonuses;

b. Whether Detroit engaged in a policy or practice of excluding non-discretionary bonuses from the Hourly Employees' regular rates of pay for overtime purposes;

c. Whether Detroit failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

d. Whether Detroit's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

e. Whether Detroit's violations were willful.

70. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

71. The Hourly Employees are known to Detroit, are readily identifiable, and can be located through Detroit's business and personnel records.

**DETROIT'S VIOLATIONS WERE WILLFUL**

72. Detroit knew it was subject to the FLSA's overtime provisions.

73. Detroit knew Kent and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

74. Detroit knew the FLSA required it to pay non-exempt employees, including Kent and the other Hourly Employees, overtime wages at rates not less than

1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

75. Detroit knew Kent and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Detroit recorded their "on the clock" hours via its timekeeping system.

76. Detroit knew it controlled the Hourly Employees' work and pay.

77. Detroit knew it paid Kent and the other Hourly Employees non-discretionary safety and attendance bonuses.

78. Detroit knew it excluded these non-discretionary bonuses from Kent's and the other Hourly Employees' regular rates of pay for overtimes purposes.

79. Detroit thus knew it did not pay Kent and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

80. Detroit's failure to pay Kent and the other Hourly Employees overtime at the required rates for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

81. Detroit knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme that deprived Kent and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

## <u>CAUSE OF ACTION</u>
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (COLLECTIVE ACTION)

82. Kent brings her FLSA claim as a collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

83. Detroit violated, and is violating, the FLSA by employing non-exempt employees, such as Kent and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for the hoursafter 40 in a workweek.

84. Detroit's unlawful conduct harmed Kent and the other Hourly Employees by depriving them of the overtime wages they are owed.

85. Accordingly, Detroit owes Kent and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

86. Because Detroit knew or showed reckless disregard for whether its bonus pay scheme violated the FLSA, Detroit owes Kent and the other Hourly Employees these wages for at least the past 3 years.

87. Detroit is also liable to Kent and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

88. Finally, Kent and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

89. Kent demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Kent, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order finding Detroit liable to Kent and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c. Judgment awarding Kent and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

d. An Order awarding attorneys' fees, costs, and expenses;

e. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Date: September 3, 2026

Respectfully submitted,

**FAGAN MCMANUS, PC**

By: */s/ Jennifer L. McManus*
Jennifer L. McManus (P65976)
Local Counsel for Plaintiff
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
Phone: (248) 542-6300
jmcmanus@faganlawpc.com

Michael A. Josephson
Andrew W. Dunlap
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR KENT & THE HOURLY EMPLOYEES**